## TILLMAN vs. DAVIS.

The return of service on the writ, by the sheriff, cannot be traversed, except for fraud or collusion.

Certiorari. Decision by Judge ALLEN, in Lee Superior Court, March Term, 1859.

William J. Tillman brought suit to the January Term, 1858, of Lee Inferior Court, against John A. Dennard and Jonathan Davis, on a promissory note given for rent. Davis lived in the county of Lee, and Dennard in the county of Dougherty. Both parties appear, from the entries on the original and second original declarations, to have been regularly served.

At the July Term, 1858, of said court, a verdict was rendered in favor of the plaintiff, judgment duly entered up, and *fi. fa.* issued.

Tillman vs. Davis.

Davis afterwards moved to set aside said judgment, on the following grounds, to-wit:

1st. That defendant Davis was, in fact, only security to the contract on which said judgment was founded, and signed the same as such.

2nd. That he gave plaintiff notice to sue the principal on said note on or about the first day of January, 1858. That the suit on which said judgment is founded was brought against himself and said principal within three months after the notice aforesaid, but that said principal was never duly served with said writ; that said principal was not served until *after* the court passed to which the writ was sued. And that, therefore, the court had no jurisdiction of said suit. That Dennard was insolvent. These facts Davis offered to prove to the court.

The court refused the motion, and Davis excepted; whereupon the court also overruled the exceptions, and Davis sued out a writ of certiorari. Upon the hearing of the certiorari at the March Term, 1859, of Lee Superior Court, it was admitted that, since the hearing in the Inferior Court, the interrogatories of C. M. Boynton, the sheriff of Dougherty county, had been taken, and that the sheriff admitted he had not served Dennard within the proper time; that the service was, however, made before the January Term, 1858, of Lee Inferior Court, and by the consent of Dennard, was dated back to the proper time. The court refused to act upon any matter not disclosed by the record from the court below, but sustained the certiorari and overruled the decision of the Inferior Court.

To this decision counsel for Tillman excepted, and now assigns the same for error.

WEST, representing KIMBROUGH & BASS, for plaintiff in error.

VASON & DAVIS, McCAY & HAWKINS, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

Of course, the testimony of Boynton, the sheriff of Dougherty county—taken after the case was decided in the Inferior Court—was properly disregarded upon the hearing of the certiorari. Had that evidence been in, it would have sustained the return of Boynton, the sheriff; and we should have been saved the necessity of inquiring whether the return of that officer, as it stands, can be controverted? The case depends upon the decision of that question. If Dennard was regularly served, as he appears to have been by the return of the sheriff, Davis was concluded by the judgment.

The question has not been adjudicated by this court. It is true that in *Higgs vs. Huson* and others (8 Ga. Rep., 317,) this court said an official return by the sheriff on a *ca. sa.* or *fi. fa.* could not be controverted; and that a party injured by a false return of this sort is remitted to his action against the sheriff. But that point was not really in the case, nor was the judgment of the court put upon that ground.

So in *Parker vs. Jennings* (26 Ga. Rep., 140,) this court permitted a defendant in execution to resist the payment of the *fi. fa.* by affidavit of illegality, where the rewas an entry of service upon the writ by the sheriff, that he had left a copy at the defendant's most notorious place of abode; it appearing, or at least being conceded, that the defendant at the time resided in a different county. But the point discussed and decided there was, whether, when the defendant has not been served, he can get rid of the judgment by affidavit of illegality. And the proposition as to the right of the party to traverse the sheriff's return, was not raised or considered.

We shall treat the question, therefore, as *res integra* in this court.

Upon examination, it will be found that the conclusive-

ness of the sheriff's return, both upon mesne and final process, is assumed as one of the axiomatic truths of the law, and the principle is found scattered broadcast throughout the whole of the text books and reports, both in England and in this country, except in the State of Connecticut, where a contrary doctrine has obtained.

"The return of the sheriff," says Baron Comyn, "is of such high regard, that generally no averment shall be admitted against it. As if A. be returned to be outlawed, he cannot say that he was only *quarto* or *quinto exactus.* Kit., 280. If the sheriff return issues upon B., it cannot be averred by A. to save the issues, that his name is not B.—2 Rol., 462, l. 5. If the sheriff in *redisseisin* returns *accessi ad terras*, &c., it cannot be assigned for error, *quod non accessit.*—Leon., 183. If *coronors* make a return, it cannot be said that only *one* made the return.—R. Raymond, 485. If a sheriff returns *scire feci* A. tenen' un' mess',. A. cannot plead *non tenet.* R. Cro. Eliz., 872; R. Mod. 10. (Com. Dig. Title Retorn G. 6 vol., 242–243.)

Sheriffs' return not traversable; but you may have an action for a false return.—Loft., 631; Rex vs. Elkins, 4 Burr. 2127; Barr vs. Satchwell, 2 Str., 813.

But I will not multiply citations upon this point. I have investigated carefully in Brooke and Viner's Abridgements, and traced the question to its fountain head, and find it well settled that by the common law no averment will lie against the sheriff's return, and one reason assigned amongst others is,•that he is a sworn officer, to whom the law gives credit.—Jenk. 143, pl. 98. There are some exceptions to the general rule in favor of life and liberty, and some modifications made by several ancient statutes. But they are slight and restricted to returns upon particular subjects, and do not affect the present case. It is also true, that while the return of the sheriff, in certain cases, will not be allowed to be contro-

32

verted in the same action, an averment may be made contrary to the same return in another action.

I lay down another proposition, which seems to be uniform and incontrovertible: that a return of the sheriff which is definitive to the trial of the thing returned, as the return of the sheriff upon his writs, cannot be traversed.—Brooke's Abr. Title Averment; Viner's Abr. Title Return, vol. XIX.

All the American authorities are collected in note (d.) appendix to vol. 2, Cowen & Hill's notes to Phillips on Ev., p. 794, and, as I stated in the beginning of this opinion, with a solitary exception, there is an unbroken array of American cases in favor of the well-established English rule, that as between the parties to the process or their privies, the return of the sheriff is usually conclusive, and not liable to collateral impeachment, except for fraud or collusion; a rule so necessary to secure the rights of the parties, and to give validity and effect to the acts of ministerial officers, leaving the persons injured to their redress by an action for a false return; and that this rule concluding the parties, applied to mesne process, by which the parties are brought into court.

I will not consume time in reviewing the Connecticut cases. Suffice it to say that in *Watson* and others against *Watson*, (6 Conn. Rep., 334). Ch. J. Hosmer, who delivered the meagre opinion of the court, says, distinctly, that it is a general rule of the English common law, that the return of the sheriff is conclusive, both as it respects mesne and final process, there being no distinction made between the two in Westminister Hall. But that in Connecticut a contrary doctrine had prevailed; and that he was unable to assign the precise reason for this departure from the English common law.

This concession is sufficient to satisfy a judge in Georgia what his duty is.

It may be supposed that to make the returns of an offi-

Tillman vs. Davis.

cer, *prima facie* evidence of their truth would be a sufficient security for the rights of the people; and to prevent the perpetration of irreparable wrong. But that is a matter for the legislature and not for the courts.

By the act of 1840 (Pamphlet, p. 40; Hotchkiss, 527,) returns made under oath, by virtue of any rule or order of the court, are traversable. But the legislature has not seen fit to extend the right to the ordinary returns made by a sheriff on processes in his hands. Where they stop, we must stop.

STEPHENS, J., concurred.

BENNING, J., dissenting.

The suit was in favor of Tillman, on a rent note made by two persons, Davis and another,—Davis living in Lee county, the other in Dougherty county. The declarations had on them sheriff's entries to the effect that each defendant was duly served with copies of the declarations.

They were, however, established declarations, the originals having been burnt with the court house, and they had been established, without notice to Davis.

Davis offered to show that the return of service as to the person in Lee was not true; offered to show that the time at which that person was served was after the return term of the declaration. The court decided that he was entitled to show this; and that is one of the decisions excepted to. Was the decision right? A majority of this court think that it was not; I think that it was.

If the return or entry on the declaration for Dougherty county was *conclusive* on Davis, I am wrong; if it was not conclusive on him, I am, I suppose I may say, right.

Was the return conclusive on Davis? If conclusive, why was it conclusive? What principle of law is there which made it conclusive? The principle which makes judgements conclusive on parties and privies to the judg-

ments? Certainly not; parties and privies have notice of the suit, and, therefore, have an opportunity of seeing to it, that the judgment shall be right. Consequently, it is but reasonable to presume, as to them, that the judgment is right. But the parties have no chance to see to it, that the sheriff's return shall be right. He acts in their absence; acts independently of them.

Is it the principle which makes the conduct of a person which has been acted on by another, conclusive on the former? That principle is, that if A. is knowingly guilty of conduct which leads B. to a false conclusion on which B. acts, and acts in such a way that he would be injured, if A. should be allowed to repudiate the conduct, A. will not be allowed to repudiate the conduct. But does that principle apply here? First, Did Davis know that this return was false until he tendered the issue? It does not appear that he did. Secondly, Had Tillman acted on the impression that Davis was sanctioning the sheriff's return? It does not appear that he had. Thirdly, But if Tillman had acted on that impression at all, had he done so in such a way that he would have been injured if Davis had been allowed to open his mouth and object to the return? It does not appear that he had? What had he done? Nothing at all.

What principle, other than these two, is there that promises more than they do towards showing that the sheriff's return was conclusive on Davis? I know of none.

It was argued that it was sufficient for Davis that he would have a right of action for a false return against the sheriff, in which action he would be at liberty to controvert the return. But is it a justification for making a man pay what he does not owe, that his paying it will give him a suit for indemnity against some third person? that is, will give him a chance for reimbursement? The sheriff may be insolvent, and so may be his sureties. And

Tillman vs. Davis.

then, how hard may this be on the sheriff or his sureties; how favoring to one entitled to no favor. Suppose this case : A. sues B. on a note to which B. has a good defence. The sheriff serves C. instead of B., but returns that he has served B. A gets a judgment against B., who, knowing nothing of the suit, does not appear to it and put in his defence. *Fi. fa.* is issued against him, and he seeks to open his mouth and say he was not served with notice of the suit. He is ordered to keep it shut and pay the money, and then make the sheriff or his sureties reimburse him. He sues the sheriff, who proves insolvent; he then sues the sheriff's sureties, and, out of them, after a five years' fight, he gets back his money, *minus* lawyer's fees, and loss of time, and loss of the difference between the value of his sold property and the price at which it was sold— to say nothing of trouble and vexation. What is the sum of the matter ? It is this : A. has collected from B. money that does not belong to him, A., and that money he will keep. B., after the expenditure of much time, trouble and money, has got back from the sheriff's sureties the money collected of him by A. The sheriff's sureties have nobody to look to but their insolvent principal. So they pocket the loss. The guilty feed on the innocent. How much better would it have been if B. had been allowed in the beginning to open his mouth and say that he had never been served with the declaration. Indeed, this court has expressly held that in such a case B. may show that he was never served.—Parker vs. Jennings, 26 Ga., 140. And such a case does not, so far as I can see, differ, materially, from the present case.

I say, then, that the fact that Davis may have an action for a false return against the sheriff, is no sufficient reason why he should not be allowed, by this issue, to question the return. The plaintiff, Tillman, might equally have the action against the sheriff; and it is more equitable that the action should be put on him, than that it should

be put on Davis, for he, being the plaintiff in the case, it was his work that the sheriff was doing when he made the false return.

It was also argued, that the decisions were in favor of the position, that the return was conclusive on Davis. No decisions, however, were referred to, except some American decisions, cited in the notes to Phillips on Evidence, (4 vol., 1087, *et seq.*,) and American decisions are not authority as to what is the law of Georgia. And even these decisions are in conflict. Connecticut holds, that the return to *mesne* process is *not* conclusive. Massachusetts, New York and North Carolina hold, that it is conclusive. (Id. 1089). Most of the cases cited, however, are cases of a return on *final* process ; cases which differ from cases on mesne process, as in the former the party has at least had his day in court.

But the exceptions which are made in the adverse American decisions are so numerous that they about balance the cases left in the rule, and so, destroy it as a rule. Id. 1089–1090.

If, however, these decisions were all one way, and if they made the rule a rule without an exception, I should still think them decisions not to be followed in Georgia.

First, I do not know, as I have said, of any principle in the law of Georgia which would justify them.

Secondly, The rule they lay down would work unjustly, in every case ; very oppressively, too, in some cases ; and would be necessary in no case.

Thirdly, The rule would favor instead of oppose estoppels, and estoppels are odious in the law.

Fourthly, The rule is opposed to a decision of this court—the decisision of Parker vs. Jennings, (supra)· True, in that case, it does not appear that the court's attention was called to the question of the conclusiveness of the sheriff's return, but the decision does cover that question, and that question was involved.

Fifthly, We have a statute which makes sheriffs' returns to rules traversable; and this, even although it requires those returns to be made on oath. If a return, even on final process, is, though made on oath, traversable, how much more ought returns on mesne or initiatory process, not made on oath, to be traversable?

Sixthly, There is not, as far as I know, any English decision in favor of the position, that the sheriff's return is conclusive; nor any decision of this court. It is true, that in Higgs vs. Huson and others (8 Ga., 321,) it is said "that an official return of this sort, to-wit, an entry of a sheriff on a *ca. sa.* or *fi. fa.* is not traversable." But this was an *obiter dictum ;* the case was on an affidavit of illegality, and there was nothing in the affidavit, to raise the question; at least, so thought the court itself, for it says: "This ground of illegality is not in the affidavit, and could not be proven, for that reason." And that *this was so,* was the principal foundation of the decision. Besides, the dictum was made in reference to "a *ca. sa.* or a *fi. fa.*," and our case is a case of original process.

Seventhly, The decisions of the Superior Court, so far as I am acquainted with them, are, that such returns are not conclusive.

On the whole, then, I think, that I ought to dissent from the judgment of the majority of the court. I, therefore, do dissent from that judgment.